1

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   QUECHAN TRIBE OF THE FORT                    CASE NO. 12cv1167 WQH(MDD)
     YUMA INDIAN RESERVATION,

12                                                ORDER
                                   Plaintiff,

13           vs.

14   UNITED STATES DEPARTMENT OF
     THE INTERIOR; UNITED STATES
     BUREAU OF LAND MANAGEMENT;

15   KEN SALAZAR, Secretary of the
     Interior; ROBERT ABBEY, Director,

16   Bureau of Land Management; TERI
     RAMAL, District Manager, BLM

17   California Desert District; MARGARET
     GOODRO, Field Manager, BLM El

18   Centro Field Office,

19                                  Defendants.

20           vs.

21   OCOTILLO EXPRESS LLC,

22                         Intervenor-Defendant.

23   HAYES, Judge:

24          The matter before the Court is the "Ex Parte Motion for Temporary Restraining Order

25   and Order to Show Cause Why Preliminary Injunction Should Not Issue" (ECF No. 9) filed

26   by Plaintiff the Quechan Tribe of the Fort Yuma Indian Reservation.

27   **I.      Background**

28          On December 19, 1980, the Department of the Interior approved a Record of Decision

                                        - 1 -                        12cv1167-WQH-MDD

1   for the California Desert Conservation Area Plan ("CDCA") which established a "long-range,

2   comprehensive plan for the management, use, development, and protection of over 12 million

3   acres of public land...." (ECF No. 12-1 at 34).

4          On October 9, 2009, Ocotillo Express LLC applied to the Bureau of Land Management

5   ("BLM") and to the County of Imperial to construct and operate a wind energy facility

6   consisting of 193 turbines on public land within the CDCA. On February 4, 2010, the BLM

7   initiated the consultation process with tribal organizations regarding the proposed wind energy

8   facility.

9          In February 2012, the Department of the Interior created a Proposed Plan Amendment

10   & Final Environmental Impact Statement/ Final Environmental Impact Report for the Ocotillo

11   Wind Energy Facility ("OWEF Project") analyzing the impact of a 12,484 acre right-of-way

12   over public land in favor of Ocotillo Express LLC to build 155 wind turbine generators. (ECF

13   No. 14-1 at 2 through 18-2 at 1).

14          On May 11, 2012, the Department of the Interior approved a Record of Decision for

15   the Ocotillo Wind Energy Facility and Amendment to the California Desert Conservation

16   Area Plan ("ROD") which approves a 10,151 acre right-of-way over public land in favor of

17   Ocotillo Express LLC to build 112 wind turbine generators. (ECF No. 13-2 at 2-50).

18          On May 11, 2012, a Memorandum of Agreement was entered into by the California

19   State Historic Preservation Historic Office, the Advisory Council on Historic Preservation,

20   the BLM, Army Corps of Engineers, and Ocotillo Express LLC as a part of the Record of

21   Decision in order to mitigate and minimize adverse impacts of the OWEF Project on cultural

22   resources. (ECF Nos. 35-2 at 32-65; 39-11 at 51-74).

23          On May 14, 2012, Plaintiff, the Quechan Tribe of the Fort Yuma Indian Reservation

24   ("Quechan"), initiated this action by filling a Complaint against the United States Department

25   of Interior; the United States Bureau of Land Management; Ken Salazar, Secretary of the

26   Interior; Robert Abbey, Director, BLM; Teri Raml, District Manager, BLM California Desert

27   District; and Margaret Goodro, Field Manager, BLM El Centro Field Office ("Federal

28   Defendants"). (ECF No. 1). Plaintiff alleges that the May 11, 2012, ROD approved "the

1   development of an industrial utility-scale wind power project ... [on public land] that

2   contain[s] hundreds of archaeological sites (containing tens of thousands of individual

3   artifacts) eligible and potentially eligible for inclusion in the National Register of Historic

4   Places." (ECF No. 1 at ¶ 3). Plaintiff alleges that "[t]he OWEF Project Area is within the

5   traditional territory of the Quechan Tribe and contains cultural and biological resources of

6   significance to the Tribe and its members." *Id*. at ¶ 4. Plaintiff alleges that the Final

7   Environmental Impact Statement/Final Environmental Impact Report ("FEIS") for the OWEF

8   Project "reports that 287 archaeological sites were identified during surveys in the Area of

9   Potential Effects for the OWEF Project." *Id*. at ¶ 42. Plaintiff alleges that the archaeological

10  sites contain artifacts including "geoglyphs, petroglyphs, sleeping circles, milling features,

11  agave roasting pits, ceramics (including unusual painted and stucco) and rare artifacts (such

12  as anvil and crescentic)" as well as "24 pre-historic trail segments and at least six identified

13  burial sites." *Id*. at ¶¶ 45-46. Plaintiff alleges that "[t]he lands within the OWEF Project Area

14  and surrounding lands, as a whole, constitute a Traditional Cultural Property, which is eligible

15  for inclusion in the National Register of Historic Places pursuant to the National Historic

16  Preservation Act." *Id*. at ¶ 6. Plaintiff asserts claims under the Administrative Procedures Act

17  ("APA"), the Federal Land Policy and Management Act ("FLPM"),the National

18  Environmental Policy Act ("NEPA"), and the National Historic Preservation Act ("NHPA").

19       On May 15, 2012, Plaintiff filed an Ex Parte Motion for Temporary Restraining Order.

20  (ECF No. 9). Plaintiff seeks an injunction against United States Department of the Interior;

21  United States Bureau of Land Management; Ken Salazar, Secretary of the Interior; Robert

22  Abbey, Director, BLM; Teri Raml, District Manager, BLM California Desert District; and

23  Margaret Goodro, Field Manager, BLM El Centro Field Office, as follows:

24              [Federal Defendants] are temporarily restrained and
                enjoined from:

25
                (1) issuing any Notice to Proceed or other form of
26              authorization for development of the Ocotillo Wind
                Energy Facility on the public lands that are the subject of
27              the May 2012 Department of the Interior Record of
                Decision for the Ocotillo Wind Energy Facility (the
28              "Ocotillo ROD");

12cv1167-WQH-MDD

1    (2) permitting, authorizing, or continuing to authorize or
2    allow any ground-disturbing activities relating to
     development of the Ocotillo Wind Energy Facility on the
3    public lands that are the subject of the Ocotillo ROD; and
     ...

4    that any ground-disturbing activities or other
5    development of the Ocotillo Wind Energy Facility on the
     public lands that are the subject of the Ocotillo ROD are
6    hereby temporarily enjoined; and ...

7    that this Temporary Restraining Order shall take effect
     immediately, with bond or security waived, and this
8    Temporary Restraining Order shall remain binding and
     in effect until further order of this Court.

9    (Proposed Order at 1-2).

10        On May 15, 2012, this Court granted a motion by Ocotillo Express LLC to intervene

11   as a defendant ("Intervenor-Defendant Ocotillo"). (ECF No. 25). On May 17, 2012, Federal

12   Defendants filed an opposition. (ECF No. 30). On May 17, 2012, Intervenor-Defendant

13   Ocotillo filed an opposition. (ECF No. 29).

14        On May 18, 2012, the Court heard oral argument.

15   **II.    Contentions of the Parties**

16        Plaintiff contends that it is likely to succeed on the merits of its claim that the OWEF

17   Project does not comply with the CDCA Class L lower-intensity land use limitations.

18   Plaintiff contends that the environmental impact of the OWEF Project is not consistent with

19   the Class L limitations because it will diminish and denigrate sensitive natural, scenic, and

20   cultural resources on public land. Federal Defendants contend that the CDCA permits wind

21   turbine development on Class L public lands. Federal Defendants contend that the CDCA is

22   not based purely on preservation and conservation and that the CDCA does not elevate

23   cultural resource concerns above other concerns including the multiple use of resources.

24        Plaintiff contends that it is likely to succeed on the merits of its claim that the OWEF

25   Project does not comply with the FLPM Visual Resource Management ("VRM") Class III

26   objective for moderate or lower changes to landscape characteristics. Plaintiff contends that

27   the "FEIS confirms that the OWEF Project ... does not meet the applicable Class III VRM

28   standards." (ECF No. 9-1 at 20). Federal Defendants contend that the BLM appropriately

1  determined that an interim VRM Class IV should apply to the OWEF Project based on the

2  visual resource values of the site and the land use allocation contemplated by the OWEF

3  Project.

4       Plaintiff contends that it is likely to succeed on the merits of its claim that the OWEF

5  Project does not comply with the NEPA requirement that Federal Defendants take a hard look

6  at the cumulative effect of projects on public land because Federal Defendants failed to

7  identify all of the relevant past, present, or reasonably foreseeable projects.   Federal

8  Defendants contend that they performed extensive analysis of the past, present and future

9  projects, that they considered several resource categories, and that they appropriately

10  determined the geographic scope for cultural resources.

11       Plaintiff contends that it is likely to succeed on the merits of its claim that the OWEF

12  Project does not comply with the NHPA requirement that Federal Defendants consult with

13  Quechan regarding the project.  Plaintiff contends that Federal Defendants were aware of the

14  Quechan Tribe's concern about the OWEF Project area, but "the first meeting between BLM

15  officials and Quechan representatives did not occur until January 2012 ...." (ECF No. 9-1 at

16  25-26).   Plaintiff contends that the Quechan Tribe was not provided with information

17  necessary to the consultation process until shortly before it was required to provide its

18  comments.  Federal Defendants contend that tribal concerns were considered by all levels of

19  the BLM and Department of the Interior and that tribal concerns played a material role in

20  development decisions for the OWEF project.  Federal Defendants contend that they engaged

21  in a two-year consultation process during which they held four site visits with tribal

22  representatives, conducted dozens of tribal consultation meetings, met with the Quechan

23  Tribe's Cultural Committee on two occasions, attempted to establish monthly meeting to

24  discuss the OWEF Project, and invited the Quechan Tribe to comment on and observe the

25  archeological resources survey.  Federal Defendants contend that the Quechan Tribe was

26  "non-responsive[]" to monthly meeting requests and the Quechan Tribe "elected not to

27  participate" in the archeological resources survey.  (ECF No. 30 at 28).

28       Plaintiff contends that allowing the OWEF Project to proceed will cause "irreparable

injury to Quechan culture, history, tradition, and religion." (ECF No. 9-1 at 27).   Plaintiff contends that "development of the OWEF Project will destroy the characteristics that" make the area "a NRHP-eligible Traditional Cultural Property" including "the presence of pre-historic trails, ceremonial areas, cremation sites, and the sheer abundance of archaeological sites and artifacts...." *Id.* Plaintiff contends that "[o]nce these sensitive desert lands and resources are lost, they cannot be replaced."[1] *Id.* Federal Defendants contend that the mitigation and avoidance measures contained in the Memorandum of Agreement protects against irreparable injury prior to an opportunity to adequately consider the merits.  Federal Defendants contend that the Memorandum of Agreement protects against irreparable injury by requiring archaeological artifacts to be identified and avoided, allowing tribal access to the area, and creating a plan and protocol for the discovery of additional artifacts or burial sites which includes cessation of ground disturbance.

Plaintiff contends that the balance of hardship tips in its favor on the grounds that important cultural resources located on public land will suffer irreparable injury if an injunction is not issued stopping all work at the OWEF Project.  Plaintiff contends that the Federal Defendants and Intervenor-Defendant Ocotillo will not suffer any harm if an injunction requiring the OWEF Project area remain undisturbed "pending further review of Interior's compliance with applicable law in this matter." (ECF No. 9-1 at 29).   Plaintiff contends that "[a]ny temporary economic harm that [the Federal Defendants] or [Intervenor-Defendant Ocotillo] may allege does not outweigh the public interest in resource preservation." *Id.* Federal Defendants and Intervenor-Defendant Ocotillo assert that cultural resources are adequately protected and that the balance of hardships and public interest tips sharply in favor of the development of renewable energy on public land.  Federal Defendants contend that the OWEF Project will provide renewable energy and offset greenhouse gas emissions, the OWEF Project will benefit the public by creating jobs and stimulating economic growth, the OWEF Project will produce tax revenue for the local and national

---

[1] At oral argument Plaintiff stated: "There would not be injury to the view shed within the next 30 days by the wind turbines ...." (ECF No. 47 at 10).

1   levels, and the OWEF Project will produce rental payments for the national government.

2   Federal Defendants assert that they have expended over 5,538 hours of work processing the

3   OWEF Project and that the proposed injunction will unnecessarily endanger the ability of the

4   Intervenor-Defendant Ocotillo to compete the project.   Intervenor-Defendant Ocotillo

5   contends that the OWEF Project will boost energy security for the nation and benefit the local

6   economy in an area that is suffering from high unemployment rates.  Intervenor-Defendant

7   Ocotillo contends that it seeks to partially fund the OWEF Project through a Congressionally

8   created investment tax credit grant for wind turbines put into service prior to the end of 2012.

9   Intervenor-Defendant Ocotillo contends that, without the benefit of the investment tax credit

10  grant, the OWEF Project would no longer be economically feasible.

11  **III.    Applicable Law**

12          "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not

13  be granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Mazurek*

14  *v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (quotation omitted).  When the

15  nonmovant has received notice, as here, the standard for issuing a temporary restraining order

16  is the same as that for issuing a preliminary injunction.  *See Stuhlbarg Int'l Sales Co. v. John*

17  *D. Brush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001).

18          The party seeking preliminary injunctive relief has the burden to show "that he is likely

19  to succeed on the merits, that he is likely to suffer irreparable harm in the absence of

20  preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the

21  public interest."  *Winter v. NRDC*, 555 U.S. 7, 20 (2008); *see also Small v. Avanti Health*

22  *Systems, LLC*, 661 F.3d 1180, 1187 (9th Cir. 2011) ("*Winter* overturned ... precedents that

23  allowed district courts to grant injunctions when a plaintiff demonstrated ... only a possibility

24  of irreparable harm[]" finding that the "possibility" standard is "too lenient").

25          In *Alliance for the Wild Rockies,* the Court of Appeals for the Ninth Circuit explained

26  that "the Supreme Court has instructed us that '[e]nvironmental injury, by its nature, can

27  seldom be adequately remedied by money damages and is often permanent or at least of long

28  duration, *i.e.*, irreparable."  *Alliance for Wild Rockies v. Cottrell*, 622 F.3d 1045, 1053 (9th

1  Cir. 2010) (quoting *Lands Council v. McNair*, 537 F.3d 981, 1004 (9th Cir. 2008)).  The Court

2  of Appeals went on to state: "[o]f course, this does not mean that 'any potential environmental

3  injury' warrants an injunction."  *Alliance for Wild Rockies*, 622 F.3d at 1053.  Irreparable

4  injury is shown when there is an "actual and irreparable injury."  *Id.* (citing *Winter*, 555 U.S.

5  at 7).

6          The Court of Appeals for the Ninth Circuit has articulated a standard "under which a

7  preliminary injunction could issue where the likelihood of success is such that serious

8  questions going to the merits were raised and the balance of hardships tips sharply in

9  [plaintiff's] favor."  *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131 (9th Cir.

10  2011) (citation omitted).  The test applies a sliding scale approach to a preliminary injunction

11  in which "the elements of the preliminary injunction test are balanced, so that a stronger

12  showing of one element may offset a weaker showing of another." *Id.*; *see also Leiva-Perez*

13  *v. Holder,* 640 F.3d 962, 966 (9th Cir. 2011) (holding that the sliding scale approach to

14  preliminary injunctions continues to be viable after *Winter* "so long as a certain threshold

15  showing is made on each [*Winter*] factor.").

16          There is a public interest in "preserving nature and avoiding irreparable environmental

17  injury" which may outweigh economic concerns when a plaintiff is likely to succeed on the

18  merits.   *Lands Council v. McNair*, 537 F.3d at 1005 (citations omitted).   However,

19  environmental actions which do not result in irreparable injury may not outweigh economic

20  concerns.  *See id*. (considering the public interest in factors including "aiding the struggling

21  local economy and preventing job loss" to determine that the balance of hardship did not tip

22  sharply in the plaintiff's favor when the plaintiff did not show a likelihood of success on the

23  merits); *W. Watersheds Project v. Bureau of Land Mgmt*., 774 F. Supp. 2d 1089, 1103-04 (D.

24  Nev. 2011) (considering the public interest in renewable energy and job creation to find that

25  the balance of hardships did not tip in plaintiff's favor when the environmental injury would

26  not result in irreparable harm).

27  **IV.    Ruling of the Court**

28          The issue before the Court at this stage in the proceeding is whether all ground

1   disturbances on the OWEF Project should be enjoined prior to the submission of a full record

2   and consideration of the merits in a preliminary injunction or expedited summary judgment.

3   In order to obtain this extraordinary preliminary relief, Plaintiff must show that it is "likely

4   to suffer irreparable harm in the absence of preliminary relief...." *Winter*, 555 U.S. at 20.

5         Plaintiff has submitted the Declaration of John Bathke, the Quechan Indian Tribe

6   Historic Preservation Officer, who states that "the [OWEF] Project area contains 287

7   identified archaeological sites, which include tens of thousands of individual artifacts." (ECF

8   No. 9-2 at 7).  Bathke states that the OWEF Project area also contains: "24 pre-historic trail

9   segments and at least six identified burial sites." *Id.*  Bathke states that he has "personally

10  visited about 20 turbine locations ... and [has] seen archaeological and cultural materials

11  within some of those 'direct impact areas.'" *Id*. Bathke states that he has "discovered

12  previously unrecorded cultural materials and archaeological sites within direct impact areas,

13  such areas like the substation, turbine locations, and access roads." *Id.*

14        The ROD recognizes that the OWEF Project would have unmitigated adverse effects

15  on certain cultural resources.  In response, the ROD provides specific mitigation and

16  avoidance measures in the Memorandum of Agreement entered into by the California State

17  Historic Preservation Historic Office, Advisory Council on Historic Preservation, BLM, Army

18  Corps of Engineers, and Ocotillo Express LLC. (ECF No. 35-2 at 32-65).  The Memorandum

19  of Agreement provides: "Archeological sites that are protected from physical impact, but are

20  within 150 feet of proposed construction activities, will be identified and labeled by

21  archaeological and Native American monitors as Environmentally Sensitive Areas (ESAs)."

22  (ECF No. 35-2 at 36).  The Memorandum of Agreement provides: "[A]n ESA will define

23  areas where construction activities cannot occur to prevent damage to historic properties."

24  *Id*. The Memorandum of Agreement provides: "[Intervenor-Defendant Ocotillo] shall ensure

25  that archaeological monitors and, to the extent practicable, tribal monitor will be on site

26  during construction to observe all construction ... near ESAs and in other areas designated for

27  full-time monitoring." *Id*. at 39.  The Memorandum of Agreement provides: "The BLM shall

28  ensure that any Native American burials and related items discovered on BLM administered

1    lands ... will be treated respectfully and in accordance with the requirements of the Native

2    American Graves Protection and Repatriation Act ...." *Id*. at 41.  The Memorandum of

3    Agreement provides: "The primary goal will be to avoid and protect newly encountered

4    burials and related cultural items and leave them in place." *Id*.

5         Federal Defendants have submitted the Declaration of Carrie Simmons, BLM

6    Archaeologist, who states that "BLM worked with [Intervenor-Defendant Ocotillo] to

7    redesign the Project to avoid direct physical impacts to identified resources."  (ECF No. 39

8    at 14).  Simmons states that during a recent trip to the OWEF Project site, archeological

9    artifacts were discovered "within the boundaries of the Project's facilities, [and] they will be

10   collected and curated." *Id*. at 20.  Simmons states that a recent canine search of the OWEF

11   Project area revealed seven areas in which the dogs alerted the possible presence of burial

12   items.  Simmons states that six of the alerts are in ESAs and will not be disturbed.  With

13   regard to the seventh area, Simmons states that "the BLM will treat that location as a new

14   discovery and is currently developing proposed treatment measures for that site consistent

15   with [the Memorandum of Agreement]." *Id*. at 26.  Simmons states that "BLM will continue

16   to consult with the tribes, and other consulting parties per the terms of the [Memorandum of

17   Agreement] ...." *Id*. at 14.

18        Plaintiff has submitted evidence that the OWEF Project area contains several identified

19   archaeological sites, but Plaintiff has failed to submit any evidence that the Federal

20   Defendants or Intervenor-Defendant Ocotillo have disturbed or plan to disturb those identified

21   archeological sites.  Federal Defendants and Intervenor-Defendant Ocotillo have submitted

22   the Memorandum of Agreement which is specifically aimed at avoiding identified

23   archeological locations, providing protective measures and treatment plans for the discovery

24   of new traditional cultural property or burial remains, and providing for monitoring of the

25   construction of the OWEF Project site.  Plaintiff has not submitted any evidence that the

26   procedures provided by the Memorandum of Agreement for newly discovered cultural and

27   burial items are not adequate to guard against irreparable injury to items discovered on public

28   land.  The Court finds that Plaintiff has failed to make a sufficient showing of likelihood of

1   "actual and irreparable injury" to support the extraordinary remedy of a temporary restraining

2   order prior to a consideration of the merits. *Alliance for Wild Rockies*, 622 F.3d at 1053. The

3   public has an interest in protection against environmental injury and promotion of

4   environmentally responsible renewable energy on public land. The record in this case shows

5   that the public's interest in preserving cultural resources has been addressed and adequately

6   protected. The record does not show that Plaintiff is "likely to suffer irreparable harm in the

7   absence of [the requested] preliminary relief ...." *Winter*, 555 U.S. at 20. Plaintiff has failed

8   to show that the balance of hardships tips sharply in its favor.

9   **V.      Conclusion**

10          IT IS HEREBY ORDERED that the "Ex Parte Motion for Temporary Restraining

11   Order and Order to Show Cause Why Preliminary Injunction Should Not Issue" (ECF No. 9)

12   filed by Plaintiff the Quechan Tribe of the Fort Yuma Indian Reservation is DENIED without

13   prejudice. The parties shall contact the Magistrate Judge immediately to meet and confer

14   regarding a schedule for an expedited motion for preliminary injunction or an expedited

15   motion for summary judgment. The Court will set a further hearing upon the filing of the

16   motion.

17   DATED:  May 22, 2012

18                                            *William Q. Hayes*
                                              **WILLIAM Q. HAYES**
19                                            United States District Judge

20

21

22

23

24

25

26

27

28