**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| QUECHAN TRIBE OF THE FORT YUMA INDIAN RESERVATION,<br><br>　　　　　Plaintiff,<br>vs.<br>UNITED STATES DEPARTMENT OF THE INTERIOR; UNITED STATES BUREAU OF LAND MANAGEMENT; KEN SALAZAR, Secretary of the Interior; ROBERT ABBEY, Director, Bureau of Land Management; TERI RAMAL, District Manager, BLM California Desert District; MARGARET GOODRO, Field Manager, BLM El Centro Field Office,<br><br>　　　　　Defendants.<br>　　vs.<br>OCOTILLO EXPRESS LLC,<br><br>　　　　　Intervenor-Defendant. | CASE NO. 12cv1167 WQH(MDD)<br><br>ORDER |

HAYES, Judge:

The matter before the Court is the "Ex Parte Motion for Temporary Restraining Order and Order to Show Cause Why Preliminary Injunction Should Not Issue" (ECF No. 9) filed by Plaintiff the Quechan Tribe of the Fort Yuma Indian Reservation.

**I.   Background**

On December 19, 1980, the Department of the Interior approved a Record of Decision

1  for the California Desert Conservation Area Plan ("CDCA") which established a "long-range,
2  comprehensive plan for the management, use, development, and protection of over 12 million
3  acres of public land...." (ECF No. 12-1 at 34).

4  On October 9, 2009, Ocotillo Express LLC applied to the Bureau of Land Management
5  ("BLM") and to the County of Imperial to construct and operate a wind energy facility
6  consisting of 193 turbines on public land within the CDCA. On February 4, 2010, the BLM
7  initiated the consultation process with tribal organizations regarding the proposed wind energy
8  facility.

9  In February 2012, the Department of the Interior created a Proposed Plan Amendment
10 & Final Environmental Impact Statement/ Final Environmental Impact Report for the Ocotillo
11 Wind Energy Facility ("OWEF Project") analyzing the impact of a 12,484 acre right-of-way
12 over public land in favor of Ocotillo Express LLC to build 155 wind turbine generators. (ECF
13 No. 14-1 at 2 through 18-2 at 1).

14 On May 11, 2012, the Department of the Interior approved a Record of Decision for
15 the Ocotillo Wind Energy Facility and Amendment to the California Desert Conservation
16 Area Plan ("ROD") which approves a 10,151 acre right-of-way over public land in favor of
17 Ocotillo Express LLC to build 112 wind turbine generators. (ECF No. 13-2 at 2-50).

18 On May 11, 2012, a Memorandum of Agreement was entered into by the California
19 State Historic Preservation Historic Office, the Advisory Council on Historic Preservation,
20 the BLM, Army Corps of Engineers, and Ocotillo Express LLC as a part of the Record of
21 Decision in order to mitigate and minimize adverse impacts of the OWEF Project on cultural
22 resources. (ECF Nos. 35-2 at 32-65; 39-11 at 51-74).

23 On May 14, 2012, Plaintiff, the Quechan Tribe of the Fort Yuma Indian Reservation
24 ("Quechan"), initiated this action by filling a Complaint against the United States Department
25 of Interior; the United States Bureau of Land Management; Ken Salazar, Secretary of the
26 Interior; Robert Abbey, Director, BLM; Teri Raml, District Manager, BLM California Desert
27 District; and Margaret Goodro, Field Manager, BLM El Centro Field Office ("Federal
28 Defendants"). (ECF No. 1). Plaintiff alleges that the May 11, 2012, ROD approved "the

development of an industrial utility-scale wind power project ... [on public land] that contain[s] hundreds of archaeological sites (containing tens of thousands of individual artifacts) eligible and potentially eligible for inclusion in the National Register of Historic Places." (ECF No. 1 at ¶ 3). Plaintiff alleges that "[t]he OWEF Project Area is within the traditional territory of the Quechan Tribe and contains cultural and biological resources of significance to the Tribe and its members." *Id*. at ¶ 4. Plaintiff alleges that the Final Environmental Impact Statement/Final Environmental Impact Report ("FEIS") for the OWEF Project "reports that 287 archaeological sites were identified during surveys in the Area of Potential Effects for the OWEF Project." *Id*. at ¶ 42. Plaintiff alleges that the archaeological sites contain artifacts including "geoglyphs, petroglyphs, sleeping circles, milling features, agave roasting pits, ceramics (including unusual painted and stucco) and rare artifacts (such as anvil and crescentic)" as well as "24 pre-historic trail segments and at least six identified burial sites." *Id*. at ¶¶ 45-46. Plaintiff alleges that "[t]he lands within the OWEF Project Area and surrounding lands, as a whole, constitute a Traditional Cultural Property, which is eligible for inclusion in the National Register of Historic Places pursuant to the National Historic Preservation Act." *Id*. at ¶ 6. Plaintiff asserts claims under the Administrative Procedures Act ("APA"), the Federal Land Policy and Management Act ("FLPM"), the National Environmental Policy Act ("NEPA"), and the National Historic Preservation Act ("NHPA").

On May 15, 2012, Plaintiff filed an Ex Parte Motion for Temporary Restraining Order. (ECF No. 9). Plaintiff seeks an injunction against United States Department of the Interior; United States Bureau of Land Management; Ken Salazar, Secretary of the Interior; Robert Abbey, Director, BLM; Teri Raml, District Manager, BLM California Desert District; and Margaret Goodro, Field Manager, BLM El Centro Field Office, as follows:

> [Federal Defendants] are temporarily restrained and enjoined from:
>
> (1) issuing any Notice to Proceed or other form of authorization for development of the Ocotillo Wind Energy Facility on the public lands that are the subject of the May 2012 Department of the Interior Record of Decision for the Ocotillo Wind Energy Facility (the "Ocotillo ROD");

> (2) permitting, authorizing, or continuing to authorize or allow any ground-disturbing activities relating to development of the Ocotillo Wind Energy Facility on the public lands that are the subject of the Ocotillo ROD; and ...
>
> that any ground-disturbing activities or other development of the Ocotillo Wind Energy Facility on the public lands that are the subject of the Ocotillo ROD are hereby temporarily enjoined; and ...
>
> that this Temporary Restraining Order shall take effect immediately, with bond or security waived, and this Temporary Restraining Order shall remain binding and in effect until further order of this Court.

(Proposed Order at 1-2).

On May 15, 2012, this Court granted a motion by Ocotillo Express LLC to intervene as a defendant ("Intervenor-Defendant Ocotillo"). (ECF No. 25). On May 17, 2012, Federal Defendants filed an opposition. (ECF No. 30). On May 17, 2012, Intervenor-Defendant Ocotillo filed an opposition. (ECF No. 29).

On May 18, 2012, the Court heard oral argument.

## II.     Contentions of the Parties

Plaintiff contends that it is likely to succeed on the merits of its claim that the OWEF Project does not comply with the CDCA Class L lower-intensity land use limitations. Plaintiff contends that the environmental impact of the OWEF Project is not consistent with the Class L limitations because it will diminish and denigrate sensitive natural, scenic, and cultural resources on public land. Federal Defendants contend that the CDCA permits wind turbine development on Class L public lands. Federal Defendants contend that the CDCA is not based purely on preservation and conservation and that the CDCA does not elevate cultural resource concerns above other concerns including the multiple use of resources.

Plaintiff contends that it is likely to succeed on the merits of its claim that the OWEF Project does not comply with the FLPM Visual Resource Management ("VRM") Class III objective for moderate or lower changes to landscape characteristics. Plaintiff contends that the "FEIS confirms that the OWEF Project ... does not meet the applicable Class III VRM standards." (ECF No. 9-1 at 20). Federal Defendants contend that the BLM appropriately

determined that an interim VRM Class IV should apply to the OWEF Project based on the visual resource values of the site and the land use allocation contemplated by the OWEF Project.

Plaintiff contends that it is likely to succeed on the merits of its claim that the OWEF Project does not comply with the NEPA requirement that Federal Defendants take a hard look at the cumulative effect of projects on public land because Federal Defendants failed to identify all of the relevant past, present, or reasonably foreseeable projects. Federal Defendants contend that they performed extensive analysis of the past, present and future projects, that they considered several resource categories, and that they appropriately determined the geographic scope for cultural resources.

Plaintiff contends that it is likely to succeed on the merits of its claim that the OWEF Project does not comply with the NHPA requirement that Federal Defendants consult with Quechan regarding the project. Plaintiff contends that Federal Defendants were aware of the Quechan Tribe's concern about the OWEF Project area, but "the first meeting between BLM officials and Quechan representatives did not occur until January 2012 ...." (ECF No. 9-1 at 25-26). Plaintiff contends that the Quechan Tribe was not provided with information necessary to the consultation process until shortly before it was required to provide its comments. Federal Defendants contend that tribal concerns were considered by all levels of the BLM and Department of the Interior and that tribal concerns played a material role in development decisions for the OWEF project. Federal Defendants contend that they engaged in a two-year consultation process during which they held four site visits with tribal representatives, conducted dozens of tribal consultation meetings, met with the Quechan Tribe's Cultural Committee on two occasions, attempted to establish monthly meeting to discuss the OWEF Project, and invited the Quechan Tribe to comment on and observe the archeological resources survey. Federal Defendants contend that the Quechan Tribe was "non-responsive[]" to monthly meeting requests and the Quechan Tribe "elected not to participate" in the archeological resources survey. (ECF No. 30 at 28).

Plaintiff contends that allowing the OWEF Project to proceed will cause "irreparable

1  injury to Quechan culture, history, tradition, and religion." (ECF No. 9-1 at 27). Plaintiff
2  contends that "development of the OWEF Project will destroy the characteristics that" make
3  the area "a NRHP-eligible Traditional Cultural Property" including "the presence of
4  pre-historic trails, ceremonial areas, cremation sites, and the sheer abundance of
5  archaeological sites and artifacts...." *Id*. Plaintiff contends that "[o]nce these sensitive desert
6  lands and resources are lost, they cannot be replaced."[1] *Id*. Federal Defendants contend that
7  the mitigation and avoidance measures contained in the Memorandum of Agreement protects
8  against irreparable injury prior to an opportunity to adequately consider the merits. Federal
9  Defendants contend that the Memorandum of Agreement protects against irreparable injury
10 by requiring archaeological artifacts to be identified and avoided, allowing tribal access to the
11 area, and creating a plan and protocol for the discovery of additional artifacts or burial sites
12 which includes cessation of ground disturbance.

13   Plaintiff contends that the balance of hardship tips in its favor on the grounds that
14 important cultural resources located on public land will suffer irreparable injury if an
15 injunction is not issued stopping all work at the OWEF Project. Plaintiff contends that the
16 Federal Defendants and Intervenor-Defendant Ocotillo will not suffer any harm if an
17 injunction requiring the OWEF Project area remain undisturbed "pending further review of
18 Interior's compliance with applicable law in this matter." (ECF No. 9-1 at 29). Plaintiff
19 contends that "[a]ny temporary economic harm that [the Federal Defendants] or [Intervenor-
20 Defendant Ocotillo] may allege does not outweigh the public interest in resource
21 preservation." *Id*. Federal Defendants and Intervenor-Defendant Ocotillo assert that cultural
22 resources are adequately protected and that the balance of hardships and public interest tips
23 sharply in favor of the development of renewable energy on public land. Federal Defendants
24 contend that the OWEF Project will provide renewable energy and offset greenhouse gas
25 emissions, the OWEF Project will benefit the public by creating jobs and stimulating
26 economic growth, the OWEF Project will produce tax revenue for the local and national

---

[1] At oral argument Plaintiff stated: "There would not be injury to the view shed within the next 30 days by the wind turbines ...." (ECF No. 47 at 10).

levels, and the OWEF Project will produce rental payments for the national government. Federal Defendants assert that they have expended over 5,538 hours of work processing the OWEF Project and that the proposed injunction will unnecessarily endanger the ability of the Intervenor-Defendant Ocotillo to compete the project. Intervenor-Defendant Ocotillo contends that the OWEF Project will boost energy security for the nation and benefit the local economy in an area that is suffering from high unemployment rates. Intervenor-Defendant Ocotillo contends that it seeks to partially fund the OWEF Project through a Congressionally created investment tax credit grant for wind turbines put into service prior to the end of 2012. Intervenor-Defendant Ocotillo contends that, without the benefit of the investment tax credit grant, the OWEF Project would no longer be economically feasible.

### III. Applicable Law

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (quotation omitted). When the nonmovant has received notice, as here, the standard for issuing a temporary restraining order is the same as that for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001).

The party seeking preliminary injunctive relief has the burden to show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008); *see also Small v. Avanti Health Systems, LLC*, 661 F.3d 1180, 1187 (9th Cir. 2011) ("*Winter* overturned ... precedents that allowed district courts to grant injunctions when a plaintiff demonstrated ... only a possibility of irreparable harm[]" finding that the "possibility" standard is "too lenient").

In *Alliance for the Wild Rockies,* the Court of Appeals for the Ninth Circuit explained that "the Supreme Court has instructed us that '[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e*., irreparable." *Alliance for Wild Rockies v. Cottrell*, 622 F.3d 1045, 1053 (9th

Cir. 2010) (quoting *Lands Council v. McNair*, 537 F.3d 981, 1004 (9th Cir. 2008)). The Court of Appeals went on to state: "[o]f course, this does not mean that 'any potential environmental injury' warrants an injunction." *Alliance for Wild Rockies*, 622 F.3d at 1053. Irreparable injury is shown when there is an "actual and irreparable injury." *Id.* (citing *Winter*, 555 U.S. at 7).

The Court of Appeals for the Ninth Circuit has articulated a standard "under which a preliminary injunction could issue where the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor." *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011) (citation omitted). The test applies a sliding scale approach to a preliminary injunction in which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.*; *see also Leiva-Perez v. Holder,* 640 F.3d 962, 966 (9th Cir. 2011) (holding that the sliding scale approach to preliminary injunctions continues to be viable after *Winter* "so long as a certain threshold showing is made on each [*Winter*] factor.").

There is a public interest in "preserving nature and avoiding irreparable environmental injury" which may outweigh economic concerns when a plaintiff is likely to succeed on the merits. *Lands Council v. McNair*, 537 F.3d at 1005 (citations omitted). However, environmental actions which do not result in irreparable injury may not outweigh economic concerns. *See id*. (considering the public interest in factors including "aiding the struggling local economy and preventing job loss" to determine that the balance of hardship did not tip sharply in the plaintiff's favor when the plaintiff did not show a likelihood of success on the merits); *W. Watersheds Project v. Bureau of Land Mgmt*., 774 F. Supp. 2d 1089, 1103-04 (D. Nev. 2011) (considering the public interest in renewable energy and job creation to find that the balance of hardships did not tip in plaintiff's favor when the environmental injury would not result in irreparable harm).

**IV.   Ruling of the Court**

The issue before the Court at this stage in the proceeding is whether all ground

1  disturbances on the OWEF Project should be enjoined prior to the submission of a full record
2  and consideration of the merits in a preliminary injunction or expedited summary judgment.
3  In order to obtain this extraordinary preliminary relief, Plaintiff must show that it is "likely
4  to suffer irreparable harm in the absence of preliminary relief...." *Winter*, 555 U.S. at 20.

5  Plaintiff has submitted the Declaration of John Bathke, the Quechan Indian Tribe Historic Preservation Officer, who states that "the [OWEF] Project area contains 287 identified archaeological sites, which include tens of thousands of individual artifacts." (ECF No. 9-2 at 7). Bathke states that the OWEF Project area also contains: "24 pre-historic trail segments and at least six identified burial sites." *Id*. Bathke states that he has "personally visited about 20 turbine locations ... and [has] seen archaeological and cultural materials within some of those 'direct impact areas.'" *Id*. Bathke states that he has "discovered previously unrecorded cultural materials and archaeological sites within direct impact areas, such areas like the substation, turbine locations, and access roads." *Id.*

14  The ROD recognizes that the OWEF Project would have unmitigated adverse effects on certain cultural resources. In response, the ROD provides specific mitigation and avoidance measures in the Memorandum of Agreement entered into by the California State Historic Preservation Historic Office, Advisory Council on Historic Preservation, BLM, Army Corps of Engineers, and Ocotillo Express LLC. (ECF No. 35-2 at 32-65). The Memorandum of Agreement provides: "Archeological sites that are protected from physical impact, but are within 150 feet of proposed construction activities, will be identified and labeled by archaeological and Native American monitors as Environmentally Sensitive Areas (ESAs)." (ECF No. 35-2 at 36). The Memorandum of Agreement provides: "[A]n ESA will define areas where construction activities cannot occur to prevent damage to historic properties." *Id*. The Memorandum of Agreement provides: "[Intervenor-Defendant Ocotillo] shall ensure that archaeological monitors and, to the extent practicable, tribal monitor will be on site during construction to observe all construction ... near ESAs and in other areas designated for full-time monitoring." *Id*. at 39. The Memorandum of Agreement provides: "The BLM shall ensure that any Native American burials and related items discovered on BLM administered

lands ... will be treated respectfully and in accordance with the requirements of the Native American Graves Protection and Repatriation Act ...." *Id.* at 41. The Memorandum of Agreement provides: "The primary goal will be to avoid and protect newly encountered burials and related cultural items and leave them in place." *Id.*

Federal Defendants have submitted the Declaration of Carrie Simmons, BLM Archaeologist, who states that "BLM worked with [Intervenor-Defendant Ocotillo] to redesign the Project to avoid direct physical impacts to identified resources." (ECF No. 39 at 14). Simmons states that during a recent trip to the OWEF Project site, archeological artifacts were discovered "within the boundaries of the Project's facilities, [and] they will be collected and curated." *Id.* at 20. Simmons states that a recent canine search of the OWEF Project area revealed seven areas in which the dogs alerted the possible presence of burial items. Simmons states that six of the alerts are in ESAs and will not be disturbed. With regard to the seventh area, Simmons states that "the BLM will treat that location as a new discovery and is currently developing proposed treatment measures for that site consistent with [the Memorandum of Agreement]." *Id.* at 26. Simmons states that "BLM will continue to consult with the tribes, and other consulting parties per the terms of the [Memorandum of Agreement] ...." *Id.* at 14.

Plaintiff has submitted evidence that the OWEF Project area contains several identified archaeological sites, but Plaintiff has failed to submit any evidence that the Federal Defendants or Intervenor-Defendant Ocotillo have disturbed or plan to disturb those identified archeological sites. Federal Defendants and Intervenor-Defendant Ocotillo have submitted the Memorandum of Agreement which is specifically aimed at avoiding identified archeological locations, providing protective measures and treatment plans for the discovery of new traditional cultural property or burial remains, and providing for monitoring of the construction of the OWEF Project site. Plaintiff has not submitted any evidence that the procedures provided by the Memorandum of Agreement for newly discovered cultural and burial items are not adequate to guard against irreparable injury to items discovered on public land. The Court finds that Plaintiff has failed to make a sufficient showing of likelihood of

"actual and irreparable injury" to support the extraordinary remedy of a temporary restraining order prior to a consideration of the merits. *Alliance for Wild Rockies*, 622 F.3d at 1053. The public has an interest in protection against environmental injury and promotion of environmentally responsible renewable energy on public land. The record in this case shows that the public's interest in preserving cultural resources has been addressed and adequately protected. The record does not show that Plaintiff is "likely to suffer irreparable harm in the absence of [the requested] preliminary relief ...." *Winter*, 555 U.S. at 20. Plaintiff has failed to show that the balance of hardships tips sharply in its favor.

## V.     Conclusion

IT IS HEREBY ORDERED that the "Ex Parte Motion for Temporary Restraining Order and Order to Show Cause Why Preliminary Injunction Should Not Issue" (ECF No. 9) filed by Plaintiff the Quechan Tribe of the Fort Yuma Indian Reservation is DENIED without prejudice. The parties shall contact the Magistrate Judge immediately to meet and confer regarding a schedule for an expedited motion for preliminary injunction or an expedited motion for summary judgment. The Court will set a further hearing upon the filing of the motion.

DATED: May 22, 2012

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge